UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MARGARET W.,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

Case No.  1:24-cv-00393

Hon.  Jane M. Beckering
U.S. District Judge

## **REPORT AND RECOMMENDATION**

This Report and Recommendation addresses Plaintiff's appeal of Administrative Law Judge (ALJ) Brian Burgtorf's decision denying Plaintiff's request for Disability Insurance Benefits (DIB) and Supplement Security Income (SSI). This appeal is brought pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB in October 2020, and SSI in September of 2021. The Social Security Administration (SSA) issued a Notice of Award for Plaintiff's SSI claim, finding Plaintiff disabled beginning January of 2021, based on blindness. (ECF No. 5-4, PageID.180.) Then, on November 22, 2022, SSA notified Plaintiff that based upon updated information, she did not meet the requirements of statutory blindness, and her benefits were denied. (ECF No. 5-4, PageID.207.) Plaintiff sought a hearing before an ALJ, and ALJ Burgtorf issued a decision denying benefits on June 6, 2023. Plaintiff appeals that decision.

The record before the Court demonstrates that Plaintiff suffers from a number

1

of severe medically determinable impairments, including carpal tunnel, asthma, anxiety, depression, bipolar disease, psychosis, and primary open angle glaucoma. Plaintiff asserts that the ALJ erred at Step III in evaluating her vision issues. Plaintiff's primary argument is that the ALJ erred in evaluating Plaintiff's contraction of the visual field in her better eye and that the ALJ failed to make a substantive analysis of the reasons she could not meet Listing 2.03A. Plaintiff argues that the ALJ committed error by simply concluding that Plaintiff did not meet the listing criteria without any analysis. Plaintiff says that this was error because her January 2021 and March 2022 Humphrey Field Analyzer central 24-2 threshold test (HFA 24-2) shows that she met Listing 2.03A between May 2020 and May 2021, when she was not engaging in substantial gainful activity.

The Commissioner asserts that the ALJ reasonably determined that Plaintiff failed to prove that she met all the criteria of Listing 2.03A. The Commissioner points to the January 11, 2021, HFA 24-2 testing because it showed a false negative error of 36 percent with "low test reliability". The Commissioner argues that the ALJ properly relied upon the "low test reliability" indicator as substantial evidence to establish that Plaintiff could not meet all the requirements necessary to meet Listing 2.03A due to the unreliability of the January 11, 2021, test results.

For the reasons stated below, the undersigned recommends that the Court reverse the ALJ's decision.

I. **Procedural History**

A. **Key Dates**

The ALJ's decision notes that Plaintiff applied for DIB/SSI in October of 2020, alleging an onset date of May 21, 2020. (ECF No. 5-3, PageID.148.) Plaintiff's claim was initially denied by the Social Security Administration (SSA) on November 1, 2020. (*Id.*) The claim was denied on reconsideration on December 29, 2022. (*Id.*) Plaintiff then requested a hearing before an ALJ. ALJ Burgtorf conducted a hearing on Plaintiff's claim on May 3, 2023, and issued his decision on June 6, 2023. (*Id.*, PageID.148-158.) Plaintiff timely filed this lawsuit on April 16, 2024. (ECF No. 1.)

B. **Summary of ALJ's Decision**

The ALJ's decision correctly outlined the five-step sequential process for determining whether an individual is disabled. (ECF No. 5-3, PageID.149-150.) Before stating his findings at each step, the ALJ concluded that Plaintiff's Date Last Insured (DLI) was December 31, 2008. (*Id.*, PageID.50.)

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) from May 2020 through May 2021. (*Id.*, PageID.151.)

At Step Two, the ALJ found that the Plaintiff had the following severe impairments: levoscoliosis of the thoracolumbar spine with disc bulges and stenosis, restrictive and obstructive lung disease, degenerative changes of the bilateral hands, persistent depressive disorder, generalized anxiety disorder, personality disorder, mild stage angle glaucoma of the right eye, and severe stage angle recession glaucoma

of the left eye. (*Id.*) The ALJ discussed non-severe impairments of opioid and alcohol use disorders. (*Id.*) The ALJ also discussed the Paragraph B criteria, finding moderate limitations in understanding, remembering or applying information, concentrating, persisting or maintaining pace, and mild limitations in adapting or managing self. (*Id.*, PageID.152.)

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*, PageID.151.) The ALJ specifically commented on the impairments listed in 1.15, 2.03, 2.04, 3.02, 12.04, 12..06, and 12.08. (*Id.*, PageID.151-152) The ALJ stated:

> Individually, or in combination, the medical evidence does not document impairments of listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually, or in combination. In making this determination, I considered all of the medical listings and determined that the claimant does not meet the necessary criteria for disability under Listings 1.15, 2.03, 2.04, 3.02, or any other listing. Additionally, I considered whether the claimant's impairments, or combination of impairments, equals a listing, and have determined that the impairments, or combination of impairments, do not equal a listing.

(*Id.*)

Before going on to Step Four, the ALJ found that the Plaintiff had the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, crawl, or climb ramps or stairs; frequently handle and finger bilaterally; can occasionally work around atmospheric conditions, as defined by the Selected Characteristics of Occupations; can occasionally work around

> extreme heat, extreme cold, and humidity; can never work around vibration; can never work around hazards, such as unprotected heights or unguarded moving machinery; can perform simple and routine tasks, as well as make simple work-related decisions; cannot work at a production rate pace, such as on an assembly line; can frequently interact with others, can never engage in commercial driving; can frequently handle small objects and avoid ordinary workplace hazards, such as doors ajar and boxes on the floor.

(*Id.*, PageID.153.)

The ALJ devoted 5 pages to discussing Plaintiff's RFC. This discussion included the following:

- a summary of the regulations regarding how the ALJ will address Plaintiff's symptoms (*Id.*),
- a summary of Plaintiff's statements (*Id.*, PageID.153-154.),
- a summary of the medical records relating to back and spine issues, lung disease, hand issues, glaucoma, and mental health issues (*Id.*, PageID.154-156.),
- a summary of medical opinions (*Id.*, PageID.156-157), and
- an explanation of how the ALJ arrived at his decision on the Plaintiff's RFC (*Id.*, PageID.157).

At Step Four, the ALJ concluded that the Plaintiff was able to perform Past Relevant Work (PRW). (*Id.*)

II.   **Standard of Review**

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x

418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ failed to provide any substantive discussion as to

why she did not meet Listing 2.03A, despite state agency medical consultant Natalie Gray, M.D. determining that Plaintiff met the Listing beginning January 1, 2021. Dr. Gray found that Plaintiff met "Listing 2.03 A Contraction of the Visual Field in the Better Eye".  (ECF No. 5-3, PageID.115.)

Evaluation:

11/20 ADLs hard to read due to glaucoma, daytime driving only.  Does not check difficulty seeing, though notes that she can't see well in other parts of form.  Lives independently, goes out alone.

GTOC est patient follows for severe glaucoma OS, and mild OD.  Has been on drops, losing peripheral vision.
1/21 - VA cc 20/20 OD and 20/25 OS, IOPs 25/21, CDRs 0.8/0.9 w/ cupping of ON OD, severe cupping OS.

HVF 24-2 w/ testing in reliable limits - severe constriction OU, OS>OD.  Much worse than 8/19, AP very concerned she is going blind at young age.  Less than 20 degrees VF OD and OS meets 2.03A.

8/19 GTOC - est care w/ glaucoma specialist.  IOP 15/25, 0.7/0.9, severe cupping OS, HVFA 24-2 nearly normal OD, and mod constriction OS (not near LL).

AOD/DOF not supported.
Recommend EOD 1/1/21 which is the month HVFA 24-2 was performed and supports LL disease.

(*Id.*, PageID.113.)

The ALJ explained his decision regarding Plaintiff's visual impairment:

> In turning to the claimant's visual impairments, the record shows that in August 2019, the claimant sought to establish care with glaucoma specialist John R. McManus, MD; at that time, she was found have severe stage angle recession glaucoma of the left eye and mild stage angle glaucoma of the right eye. She had an MD of -3.80 dB on the right and an MD of -13.02 dB on the left. (Ex. C1F)
>
> In January 2021, the claimant reported that she had worsening peripheral vision and that glare bothers her; MD was -27.02 dB on the right and -31.44 dB on the left, but there was low test reliability (Ex. C11F, C12F). In September 2021, the claimant reported not being entirely compliant in using her eye drops; her uncorrected visual acuity worsened to 20/80 on the left; in November 2021, better compliance was reported with no changes to the peripheral vision noted. In March 2022, the claimant reported continued loss of peripheral vision and worsening central vision; corrected visual acuity was 20/25 on the right and 20/30 on the left and visual field testing was still with poor indices and unknown if reliable or not, there was an MD of -22.06 dB on the right with excessive high false positives and -29.55 dB on the left. (Ex. C20F, C21F) In July 2022, the claimant reported better compliance; visual field testing shoed an MD on -10.20 dB in the right eye (again with excessive high false positives) and an MD of -24.88 dB in the left eye (with excessive high false positives). On July 27, 2022, the claimant proceeded with a selective laser trabeculoplasty on both eyes. (Ex. C24F, C25F)
>
> The claimant participated in a consultative ophthalmological evaluation in October 2022 with Charles Reed, OD. Her best corrected visual acuity was 20/20 in both eyes, slit lamp examination was normal, intraocular pressure was above normal at 23 on the right and 24 on the left, and there was optic nerve cupping with left worse than right. Visual field testing showed severe constriction in both eyes – the right eye showed usable island of vision of 24 x 24 degrees and an MD of -18.51 dB and the left eye showed no usable vision and MD of -29.88 dB with slightly high false positive errors. (Ex. C26F)
>
> In March 2023, the claimant's vision was both subjectively and objectively worsening in the left eye, but the claimant remained non-compliant with her prescribed eye drops; she had previously cancelled surgery (Ex. C37F)

(*Id.*, PageID.155.)

Plaintiff could satisfy Listing 2.03A by establishing that she has contraction of the visual field in her better eye with the widest diameter subtending an angle around the point of fixation no greater than 20 degrees. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §2.03A; Social Security Ruling (SSR) 07-01p, 2007 WL 2215467, at *1. The Social Security Administration relies upon the Humphrey Field Analyzer central 30-2 threshold test and central 24-2 threshold test to determine whether a claimant meets

these criteria. *Id.* at *2. However, the results are not considered "reliable for evaluating visual field loss if the fixation losses exceed 20 percent, or if the false positive errors or false negative errors exceed 33 percent." *Id.*

The Commissioner argues that the January 2021 low test reliability reasonably led the ALJ to conclude that Plaintiff did not meet Listing 2.03A. The Commissioner concedes that the March 2022 test met the criteria of Listing 2.03A. However, because Plaintiff was performing SGA in March of 2022, she could not be disabled under the SSA as of that date. Plaintiff's eyesight improved following her July 2022 laser trabeculoplasty surgery, and October 2022 test showed that she no longer met the Listing requirement. (*Id.*, PageID.129.)

Initially, the Plaintiff was awarded SSI after a determination that she was disabled as of January 1, 2021. (ECF No. 5-4, PageID.180.) On November 22, 2022, SSA denied the early award "based on the evidence now in your file." (ECF No. 5-4, PageID.207.)

The denial of benefits led to a hearing and decision by ALJ Burgtorf, who summarily rejected that Plaintiff met Listing 2.03A without providing any analysis of the evidence or addressing the Listing factors. The only analysis of Plaintiff's vision issues were addressed later in the opinion as stated above. And although the evidence showed that Plaintiff had ongoing vision issues that likely met the Listing, the ALJ noted that the January Humphrey Field Analyzer testing (24-2) had low test reliability and could not be considered reliable. The March 2022 test returned reliable results and showed that Plaintiff met the Listing requirements, but the ALJ

determined that since Plaintiff performed SGA by working in the third quarter of 2021, that test did not matter for disability purposes.

There are problems with the ALJ's analysis. First, the ALJ failed to address whether Plaintiff met Listing 2.03A during the period when she was not engaging in SGA. The decision lacks any analysis addressing this issue. Then the ALJ relied solely on the January 2021 "low test reliability" to reject her claim of disability. The ALJ failed to consider that the reliable March of 2022 test showed that Plaintiff still met the Listing requirements in 2.03A, solely based upon the fact that Plaintiff was engaging in SGA at that time. The ALJ failed to analyze whether Plaintiff was disabled due to her vision issues at the very least between the January 2021 and March 2022, when she was not performing SSA. The ALJ found that Plaintiff was not performing SGA between May 2020 through May 2021. The ALJ failed to address whether Plaintiff could meet the listing during that time frame. Finally, the ALJ failed to address Dr. Gray's opinion that Plaintiff met the Listing as of January 1, 2021. (ECF No. 5-3, PageID.115-117.) Although, the ALJ stated he was not entirely persuaded by Dr. Gray's opinions, he never addressed Gray's opinion regarding Plaintiff's vision issues. (*Id.*, PageID.156.) In the opinion of the undersigned, additional analysis is required because substantial evidence does not support the ALJ's decision regarding Plaintiff's vision issues.

## IV.    Recommendation

Accordingly, it is respectfully recommended that Court reverse the ALJ's decision and remand this matter to the Commissioner for consideration because substantial evidence does not support the ALJ's decision.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:    March 26, 2025                                          /s/ *Maarten Vermaat*
                                                                                   MAARTEN VERMAAT
                                                                                   U.S. MAGISTRATE JUDGE